**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**JEFFERY L. JOHNSON,**

Plaintiff,

v.

**WILLIAM J. HENDERSON, Postmaster General, United States Postal Service,**

Defendant.

Civil No. 00-240 (MJD/JGL)

**O R D E R**

---

APPEARANCES

Gregory Wylie, Esq., for Plaintiff.

Mary Trippler, Esq., for Defendant.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on August 27, 2001 on Plaintiff's Motion to Compel Discovery (Doc No. 21) and Defendant's Motion to Compel Discovery (Doc. No. 27). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

This lawsuit arises from claims of race discrimination in employment in violation of Title VII of the civil Rights Act of 1964. Plaintiff, the

FILED SEP 04 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

only African American employee of the Elmwood Postal Station in St. Louis Park, Minnesota, alleges disparate treatment, disparate impact, and retaliation in his employment situation. Specifically, Plaintiff claims that a supervisor showed him a bullwhip and said, "Let's get to work." Since Plaintiff complained about this incident, he alleges he has been subjected to disparate treatment and retaliation.

On April 19, 2001, Defendant served Plaintiff with its first set of interrogatories and document requests. Defendant argues that many of Plaintiff's responses are deficient. Specifically, Defendant asserts that many of Plaintiff's responses are incomplete. Defendant seeks an Order requiring Plaintiff to supplement his answers to the contested interrogatories and document requests.

Plaintiff served Defendant with his interrogatories and document requests. Plaintiff agues that many of Defendant's responses are deficient insofar as they are limited to the Elmwood Postal Station. Plaintiff originally requested information regarding the Postal Service nationwide, but has since limited his requests to information regarding the Postal Service, Twin Cities area. Plaintiff seeks an Order requiring Defendant to respond to his requests by providing information for the Twin Cities area, not just the Elmwood Postal Station. In addition, Plaintiff seeks an Order granting him access to Defendant's employee's personnel files.

At the motion hearing, the parties stated that many discovery issues were resolved. Accordingly, this Order will address only the unresolved issues as they were presented at the hearing.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). However, the Court may limit discovery when the "burden or expense of the proposed discovery outweighs the likely benefit." Fed. R. Civ. P. 26(b)(2). Written interrogatories and requests for the production of documents are two discovery methods allowed under the Federal Rules. See Fed. R. Civ. P. 26(a)(5). When served with interrogatories, the party must answer and "furnish such information as is available to the party." Fed. R. Civ. P. 33(a). If a party objects to an interrogatory, the party must state the reason for the objection with specificity and answer the interrogatory to the extent it is not objectionable. See Fed. R. Civ. P. 33(b)(1), 33(b)(4). If a party objects to a document request, the party must state the reason for the objection. See Fed. R. Civ. P. 34(b).

**A. Defendant's Interrogatory Nos. 5 and 11**

Defendant's interrogatory No. 5 asks Plaintiff to:

> identify all persons you believe were similarly situated to you but were treated differently based on their race. For each please specify the person's name, address and race, as well as identify how they were treated different [sic] and when that occurred.

Defendant's interrogatory No. 11 seeks information regarding:

> each and every discriminatory action you believe has been taken against you by anyone employed by the Postal Service, excluding any conduct by Steve Steblay. For each please:
> a. describe the conduct;
> b. indicate the date the conduct occurred;
> c. identify any witnesses to the conduct;
> d. indicate all facts supporting the allegation that this conduct was bases [sic] on your race or sex; and
> e. indicate the response given when you reported the conduct.

Defendant argues that Plaintiff's responses to these interrogatories are too general, that they do not contain enough detailed information. Specifically, Defendant argues that it needs the names of other employees, similarly situated, who were treated differently from Plaintiff and facts and names relating to any alleged disparate treatment.

In response Interrogatory No. 5, Plaintiff provides the name of one employee along with the specifics of an incident involving that man. In addition, Plaintiff asserts that he was treated differently from all the other forty-four carriers at the Elmwood Station, but proffers no specific facts to support that claim. In response to Interrogatory No.11, Plaintiff lists some specific incidents in which he was allegedly treated differently followed by statements such as,

"The supervisors have not treated non-African Americans that way," and "the Postal Service did not investigate the complaint as it would have if a non-African American had made the complaint." Except for the one incident previously mentioned in Plaintiff's answer to Interrogatory No. 5, Plaintiff advances no evidence of specific incidents in which non-African Americans were treated differently from Plaintiff.

The Court finds Plaintiff's responses inadequate. To prove disparate treatment, the gravamen of Plaintiff's case, Plaintiff must cite specific instances. See Stanback v. Best Diversified Prod., Inc., 180 F.3d 903, 910 (8th Cir. 1999)(citation omitted). Bare allegations that no one else was denied light-duty assignment due to a disability, no one else was denied a request for an inspection of a dangerous situation, and no one else was subjected to "persistent harassment" from supervisors are insufficient. See Taylor v. Southwestern Bell Telephone Co., 251 F.3d 735, 740 (8th Cir. 2001); Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994) (finding "vague allegations" insufficient to demonstrate discrimination). Plaintiff's argument that Defendant should have gathered this information during depositions is unavailing. Whether or not depositions ultimately prove satisfying has no relation to a party's obligation to completely answer interrogatories. See Fed. R. Civ. P. 33(a). Plaintiff initiated this lawsuit by claiming, among other things, that he was "subjected to a higher standard than other non-African American mail carriers." Plaintiff must be

prepared to present facts that support his own allegations. Defendant has a right to know what situations led Plaintiff to believe he was treated differently. Without a recitation of specific situations, Defendant cannot mount its defense or rebut Plaintiff's allegations. Plaintiff must supplement his answers with the specific facts Defendant's interrogatory seeks. Thus, this part of Defendant's motion is granted.

**B. Defendant's Interrogatory No. 6 and Request for Records**

Defendant argues that Plaintiff's response to Interrogatory No. 6 is deficient in that it is incomplete. In addition, Defendant asserts that, by his own admission, Plaintiff has six file cabinets of documents relating to his employment with Defendant. Plaintiff has only produced a few of those documents and Defendant seeks an Order compelling production of the other responsive documents contained in the file cabinets. Plaintiff admits that the responses are incomplete and promises to fully supplement the answers. At the motion hearing, the Court ordered Plaintiff to supplement these answers by the end of the discovery period, September 1, 2001. Therefore, this part of Defendant's motion is granted.

**C. Defendant's Interrogatory No. 10**

At the motion hearing, the parties stated that there are no more issues regarding this motion. Therefore, this part of Defendant's motion is denied as moot.

D. **Plaintiff's Request for Personnel Files**

Without referring to a specific interrogatory or document request, Plaintiff argues that Defendant has refused to produce the personnel files of persons Plaintiff alleges engaged in discriminatory conduct or who received treatment different from that received by Plaintiff. Defendant responds that it will produce the relevant portions of those personnel files, but refuses to produce entire files because of a need to protect the confidential information of its employees. Defendant will, however, allow Plaintiff to review relevant portions of the files in Defendant's offices. At that time, Plaintiff can request copies of relevant information. Plaintiff responds that what is missing from a given file may be as important as what is included in the file. Defendant is willing to stipulate that certain information is not in the files, however, Plaintiff asserts that it is important to his case to show an actual file at trial, rather than just mention a stipulation.

The Court finds Plaintiff's argument without merit. Personnel files often contain private, embarrassing, sensitive, and personal information about employees. Defendant has an obligation to protect this private information. Defendant agrees to provide Plaintiff with any information that is relevant to his race discrimination claims and could lead to the discovery of admissible evidence. This is all Plaintiff is entitled to. Plaintiff has asserted no compelling need justifying greater access than Defendant offers. The desire to use a prop at

trial does not justify allowing inspection of the private personnel files of Defendant's employees. Although Plaintiff has signed Defendant's confidentiality agreement, that is not enough protection to allow unfettered access to the personnel files at issue. See Raddatz v. The Standard Register Co., 177 F.R.D. 446, 447-48 (D. Minn. 1997) (finding that "the very act of disclosing an employee's sensitive and personal data is a highly . . . intrusive act – whether or not that disclosure is governed by the terms of a Confidentiality Order"). Therefore, Plaintiff will be allowed to inspect only the relevant portions of the requested personnel files. See id. at 448 (reasoning that producing files in their entirety is unnecessary when the relevant information can be obtained by less intrusive means). These inspections shall take place at Defendant's place of business. Defendant must provide Plaintiff with copies of any information Plaintiff requests.

**E. Plaintiff's Interrogatory Nos. 8 and 9**

Plaintiff's original interrogatories and document requests applied to the United States Postal Service, nationwide. Plaintiff has since limited his requests to information regarding the Twin Cities area. Defendant originally responded to Plaintiff's requests by providing information for only the Elmwood Postal Station in St. Louis Park, Minnesota. Defendant has since offered to supplement its answers to include the Minneapolis Post Office ("Minneapolis area"), the area under the supervision of Rachel Eastman. This area has over

2000 employees and is the area in which the Elmwood Postal Station is located. In addition, Defendant states that it will provide information on race-based complaints made against the alleged discriminating officials, regardless of location. Defendant argues that these limits are necessary because the Twin Cities area has approximately 8000 employees and all employee records must be searched by hand. Defendant asserts that searching 8000 files would be overly burdensome and would not reveal any more relevant material. In addition, Defendant argues that the Minneapolis area is the relevant area in this case because Plaintiff's claims require him to prove he was similarly situated to other employees who were treated differently. Defendant posits that in order to be similarly situated, Plaintiff and the other employees should have the same supervisor, in this case, Rachel Eastman. Plaintiff responds that he is also suing on a "pattern and practice" theory and therefore, broader discovery is appropriate. Defendant counters that since Plaintiff has not produced an expert witness to support his pattern and practice claim, he cannot prevail on this theory at trial.

The Court finds that Defendant's argument that Plaintiff is not entitled to discovery based on the entire Twin Cites area because he may not prevail on the pattern and practice claim at trial is without merit. The purpose of discovery is to identify relevant information. Whether or not the information

will be persuasive at trial or even admissible at trial is not to be decided at this stage of the litigation.

However, the Court also finds that the Minneapolis area, the area supervised by Rachel Eastman, is the relevant geographic area in this case. In order to make a prima facie showing of disparate treatment and impact, Plaintiff must provide "'specific, tangible evidence' showing a disparity in the treatment of similarly situated employees." Stanback v. Best Diversified Prod., Inc., 180 F.3d 903, 910 (8th Cir. 1999)(citation omitted). This requires a showing that Plaintiff is similarly situated "in all relevant respects," to other employees who did not receive disparate treatment, including the involvement of the same decision-makers. Harvey, 38 F.3d at 972 (citations omitted). The Eighth Circuit does not find this requirement satisfied when a Plaintiff and other employees have different supervisors. See Stanback, 180 F.3d at 910; Britton v. City of Poplar Bluff, Mo., 244 F.3d 994, 998 (8th Cir. 2001) (citation omitted).

In this case, Defendant is offering to provide discovery related to the Minneapolis area and to other employees whom Plaintiff alleges engaged in discriminatory conduct, regardless of their location. Moreover, Defendant has conducted a search of the Northland Division (of which the Court understands the Twin Cities and Minneapolis areas are a part) for any race-based "step 2" EEO complaints and found no such complaints. Defendant has stated that it does not track employee complaints based on the name of the alleged

discriminating employee, that EEO grievances are not tracked before "step 2," and that informal complaints are not officially tracked at all. Therefore, a broader scope of discovery would not only be burdensome, it would also be ineffective.

The Court finds that an examination of the Minneapolis area, an area that contains over 2000 workers, is sufficient to provide Plaintiff the information he requires. During his tenure with the Post Office, Plaintiff has worked at the Brooklyn Center and St. Louis Park postal stations, both located within the Minneapolis area. Allowing discovery based on the entire Minneapolis area expands Plaintiff's discovery to include twenty-eight stations in addition to the two stations where Plaintiff has been employed. Since Plaintiff's claims are based on being "similarly situated" and Defendant's system for tracking employee complaints is not very formalized, it is unlikely that investigating approximately 8000 employee records by hand will furnish a benefit that can justify the time and expense involved. See Fed. R. Civ. P. 26(b)(2). Discovery from the Minneapolis area should also provide enough relevant information for Plaintiff to pursue his pattern and practice claims of employment discrimination under the Civil Rights Act of 1964. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (listing the four requirements for bringing an individual claim under the act); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.

1995) (citation omitted).[1] Furthermore, since Defendant will provide discovery related to all alleged discriminating individuals, regardless of their locations, Plaintiff's concerns that postal inspections are performed by supervisors from different stations should be alleviated. Thus, the Court finds that confining discovery to the Minneapolis area is an appropriate limit on the scope of discovery in this case. Discovery based on the Minneapolis area is enough to yield any evidence of a pattern and practice of discrimination, if one exists, without being unduly burdensome on the Defendant. See Fed. R. Civ. P. 26(b)(2).

Accordingly, Plaintiff's motion is denied and Defendant is ordered to fully respond to Plaintiff's discovery requests with information from the Minneapolis area, the area under the supervision of Rachel Eastman.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Plaintiff's Motion to Compel Discovery (Doc. No. 21) is **DENIED**;

---

[1]"Pattern and practice" is the burden of proof required for plaintiffs to prevail in a class action employment discrimination law suit. See Jenson v. Eveleth Taconite Co., 824 F. Supp. 847, 860 (D. Minn. 1993). For an individual plaintiff to demonstrate a prima facie case of employment discrimination under Title VII, he need only prove (1) he is member of a racial minority; (2) he was qualified for a job he applied for and that the employer was trying to fill; (3) he did not get the job, although he was qualified; and (4) the employer continued to seek other applicants with plaintiff's qualifications. See McDonnell Douglas, 411 U.S. at 802. Since this is not a class action, the Court assumes Plaintiff is using the term "pattern and practice" in a generic sense, to apply to a generalized climate of discrimination.

(2) Defendant's Motion to Compel Discovery (Doc. No. 27) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order; and

(2) Parties must comply with the Order and respond to any outstanding discovery requests by October 5, 2001.

Dated: September ~~5~~ 4, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500